## GASAWAY ET AL. v. CITY OF LAFAYETTE.

[No. 9,106. Filed October 8, 1915. Rehearing denied November 3, 1915. Transfer denied February 24, 1916.]

QUIETING TITLE.—*Laches.*—*Findings.*—*Review.*—In a suit for possession and to quiet title to certain real estate conveyed by plaintiffs' ancestor to defendant city for a market place, upon condition that on ceasing to use the same for a market place title should revert to the grantor, plaintiffs were guilty of such laches as to preclude a reversal of the judgment of the trial court for defendant, where the special finding disclosed that during the lifetime of the original grantor the use of the property for a market place was abandoned; that the city continued to assert title, and that thereafter during a period of thirty-nine years, the property was used and occupied as a street, while public and private rights resulting from such use had intervened to such extent that a reversal would result in hardship, litigation and needless expense.

From Carroll Circuit Court; *James P. Wason,* Judge.

Action by Katherine Gasaway and others against the city of Lafayette. From a judgment for defendant, the plaintiffs appeal. *Affirmed.*

*M. E. Clodfelter, Hanna & Hall* and *William W. Ullrich,* for appellants.

*Arthur D. Cunningham* and *Charles R. Pollard,* for appellee.

SHEA, C. J.—Appellants, as the only surviving heirs of Aaron T. Claspill, brought this action to

recover the possession of and to quiet title to certain real estate in the city of Lafayette, Indiana. An answer in general denial to the second paragraph of complaint formed the issues submitted to the court for trial. Upon proper request, the court made a special finding of facts the substance of which is as follows:   On April 19, 1847, Aaron T. Claspill was the owner in fee and in possession of the real estate in controversy, and on that date by deed, in which his wife joined, conveyed the real estate to the town (now city) of Lafayette, Indiana. The warranty deed, which is set out in the special findings omitting the formal parts reads as follows:

"This Indenture made this nineteenth day of April, A. D. Eighteen hundred and forty-seven, Aaron T. Claspill and Flora Claspill, his wife, of the county of Tippecanoe, in the State of Indiana of the first part and the President and Trustees of the town of Lafayette in said State and their successors in office of the second part, witnesseth that the said party of the first part in consideration of the sum of two hundred dollars to them in hand paid by the said Party of the second part, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell and convey unto the said party of the second part and their successors in office and assigns forever, all that certain tract or parcel of land, lying in the county of Tippecanoe and state of Indiana towit:   Thirty feet off of the east end of lot number ninety-seven (97) in the original plat of the town of Lafayette, the same fronting sixty-six feet on Mississippi Street in said town this grant being upon the condition that said ground be and forever remain open as a public Market Space and in case the same should ever hereafter be diverted to any other use or purpose the same is to revert back to the said grantor, his heirs and assigns, forever, to have and to hold the premises and appurtenances

above described to the said party of the second part and their successors in office and assigns forever,   *   *   *''.

Appellee town took possession of the real estate and has ever since and now has possession thereof. It is specially found by the court that the deed was made and executed upon the following conditions, inserted therein:

"This grant being upon the condition that the said ground be and forever remain open as a public market space, and in case the same should ever hereafter be diverted to any other use or purpose, the same is to revert back to the said grantor, his heirs and assigns forever."

That in 1853 the town of Lafayette adopted the city form of government, and, thereafter became the city of Lafayette, with a mayor as chief officer; city council and city attorney through which the public business was conducted and administered; that there was never any markethouse erected upon the real estate described in the complaint, and same was not used as a market space since the year 1873, but was used as a street and public throughfare, from that period and for some years prior thereto; that at one time an open market space was maintained by the city of Lafayette and certain benches or tables were kept and maintained by the city for the use of dealers for the purpose of displaying their goods thereon, but the court finds from the evidence that the benches were placed near the tracks of the Monon railway in Fifth Street as platted in the original plat, and not upon the lands described in the complaint or any part thereof; that these benches were removed from Fifth Street about thirty-nine years ago, prior to 1874, and there has never been any public market in the city of Lafayette either

upon Fifth Street as platted or upon the lands described in the complaint since the removal of the benches.

The market space consists of a strip of land thirty feet wide, off the east end of lots 97 to 100 inclusive, in the original plat of the town of Lafayette, and extended the full length of a block from Columbia to Main Street. Findings Nos. 11 to 16 inclusive relate to certain improvements and plans for the improvement of Fifth Street, including the market space, and in finding No. 16 the improvement is found to have been completed on August 12, 1895. Thereafter, in making improvements upon Fifth Street, the common council of the city claimed the whole of the market space as a street under the name of Fifth Street, and in making improvements thereon referred to the same by resolution as Fifth Street. On June 13, 1898, the common council adopted an ordinance for the improvement of Fifth Street from Columbia Street to Main Street by the construction of a cement sidewalk nine feet six inches in width on the west side of the street and the cost of constructing the improvement was assessed against the abutting owners of the real estate.

It is found that since the abandonment and nonuser of a public market thirty-nine years or more ago the city has claimed title and ownership and has had uninterrupted possession of and has exercised control over the real estate in controversy, adverse to appellants' interests, and such claim of ownership has been undisputed during all of said time until the demand made by appellants on the city October 22, 1912; that since 1853 the so-called market space has been more or less used by the traveling public as a street, by drivers of vehicles and pedestrians; that it is located in the heart of the business district and forms an indispensable connection between Main

Street and Columbia Street and means of approach
to the business houses located upon the west side of
Fifth Street between Main and Columbia Streets;
that to discontinue the use of the street and deprive
the traveling public of this means of reaching the
various points which it connects would inflict
irreparable injury; that the general traveling pub-
lic, both pedestrians and users of vehicles, have
become habitual users of this thoroughfare and pub-
lic business has been shaped with reference to such
usage, all of which has been done with the full knowl-
edge of a portion of appellants or those claiming
under them, and.was so used during the lifetime of
Aaron T. Claspill. It is also set out in detail in the
findings of fact that all the real estate has been
improved by the erection thereon of permanent and
substantial buildings of brick or concrete, some of
which were erected as long ago as 1875, occupied as
business houses, etc., and that there is no other street
which can furnish a means of ingress to or egress
from certain of the buildings. The relationship of
appellants to Aaron T. Claspill is set out in detail in
finding No. 22; that on November 10, 1912, appel-
lants served a demand for the possession of the real
estate, in writing, on the mayor of the city, and on
the same day demanded of the mayor and common
council possession of the real estate, claiming title
thereto on account of the breach in the condition of
the deed for failure to keep and maintain the lot as a
market space, but the court finds that appellee
refused to deliver possession of the real estate to
appellants. It is also found that all of appellants
except Dora Miller are and have been nonresidents
of Indiana for periods varying from their birth to
thirty-one years; that the value of the real estate in
controversy is $9,000.

Upon these facts, conclusions of law were stated as

follows: That the law is with appellee and appellants have no right, title to, or interest in the real estate or any part thereof. Appellants' motion for a *venire de novo* was overruled, also their motion for a new trial. It is assigned that the court erred in its conclusions of law upon the facts found, and in overruling appellants' motion for a *venire de novo* and for a new trial.

All the questions presented in this case on behalf of appellants are technical. The facts are fully set out herein, and show clearly that during the lifetime of the original grantor, Aaron T. Claspill, he permitted the property to be abandoned for market uses, and to be used as a public street. His heirs could have no greater rights than he had. The property has been in the possession of the city, as found, for a period of thirty-nine years. Public, as well as private rights have intervened to such an extent that a reversal of this cause would result in hardships, litigation and needless expense. Appellants and their ancestors have been guilty of such laches as to prevent this court from overruling the decision of the trial court on the merits of the cause. Judgment affirmed.

Note.—Reported in 109 N. E. 789. As to deeds restricting use of premises to specified purpose, see 95 Am. St. 223. See, also, 32 Cyc 1345, 1385.